## Sheffer *versus* Montgomery & Brough.

1. Montgomery consigned wheat to Frick, who accepted a draft against it payable April 9th. At the request of Sheffer, knowing the wheat to be Montgomery's, Frick sold it and lent the proceeds to Sheffer to be returned April 8th to meet the draft; the draft not being paid Montgomery could recover for the wheat against Sheffer, notwithstanding Frick owed Sheffer.

2. The proceeds of the wheat belonged to Montgomery until Frick should pay the draft.

3. The wheat was Montgomery's as between him and Frick.

4. The acceptance of Frick and his guaranty of the sale did not make him owner of the wheat.

5. Payment only could give Frick the ownership.

6. Sheffer had no title to the draft or the money, and could not ask a restoration of it conditional to the payment of the money, although Frick might have asked it.

May 4th 1870. Before Thompson, C. J., Read, Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *York county*: No. 15, to May Term 1870.

This was an action of assumpsit to April Term 1866, brought by John Montgomery and John A. Brough, trading as Montgomery & Brough, against Emanuel Sheffer.

The plaintiffs did business in Chambersburg, Pennsylvania, and sent a quantity of wheat for sale to E. A. Frick & Co., commission merchants in Baltimore. About the time of the consignment the plaintiffs drew on Frick against the wheat for $2000; the draft was dated March 7th 1866, payable in 30 days after date and was accepted by Frick on the 9th. About the last of March, Frick & Co. sold the wheat and at the same time the defendants obtained from them the proceeds. The plaintiffs alleged that the defendant, knowing the wheat was the plaintiffs', induced Frick & Co. to sell it, and give him the money, under a promise that he would return it on the 8th of April, previously to the maturity of the draft, and that therefore he was liable to the plaintiffs for the amount of the proceeds of the wheat, the draft not having been paid by Frick & Co.

On the trial, February 15th 1869, before Fisher, P. J., the plaintiffs gave evidence that the defendant called on Frick & Co., to let him have some money to make his bank account good until after the 1st of April, when the money should be returned; when the defendant called, the wheat of plaintiffs was on the platform of Frick's store; defendant asked Frick to sell it so as to let him have the money; he was informed that it was plaintiffs' wheat; it was agreed to sell it and lend the money to defendant, to be returned after the 1st of April to meet the draft of the plaintiffs; after the wheat should be sold the money was to be handed to J. M. Foust, who was said to be the agent of the defendant. The

[Sheffer *v.* Montgomery.]

wheat was sold by Frick & Co., for $1718.16 and the money paid to Foust, who gave the following receipt:

" Received, Baltimore, March 29th 1866, of E. A. Frick & Co., Seventeen Hundred and Eighteen Dollars and Sixteen Cents, the amount of 731 8-60 Bus. Montgomery & Brough Wheat to be returned April 8th 1866.

$1718.16.　　　　　　　　　　　　　J. R. Foust, for
　　　　　　　　　　　　　　　　　　　　　E. Sheffer."

E. A. Frick testified that the defendant requested him to lend the money received from plaintiffs' wheat; that he consented to do so on condition that it should be returned on the 8th of April 1866; that he did lend that money and paid it to Foust for the defendant: Foust was the defendant's car agent. Foust testified that he received $1718.16 to hand to the defendant; that at the same time he received other money from Frick, amounting in the whole, including the proceeds of plaintiffs' wheat, to about $2300; that he paid all the money to the defendant. There was other evidence corroborative of the foregoing. There was evidence of the insolvency of Frick & Co. By cross-examination of Frick, the defendant proved that at the time the defendant received the money, the defendant was president of the Glen Rock Bank, and that Frick then owed the bank $2800. Frick could not say whether he sent the money to the defendant as an individual or as president of the bank and for the use of the bank.

The defendant gave evidence that on the 3d of March 1866, the bank held a check of Frick & Co., which they sent to Baltimore for collection; that it was returned unpaid, and on the 30th of March, the defendant paid to the cashier $2800 to pay the check; he gave evidence also, that on the 29th of March, there was a balance on the books of the bank in his favor; had been for some time before, and was afterwards.

The defendant further gave evidence that by the invariable custom of commission merchants they were responsible for sales, and could sell without consulting the owner; that they guarantied their sales, and received a commission for it.

The plaintiffs requested the court to charge:—

1. " That if the jury believe from the evidence that the plaintiffs had sent the wheat to E. A. Frick & Co. for sale, and that said wheat remained at their warehouse unsold in the latter part of March 1866, and that E. A. Frick & Co. were insolvent at the time, and that defendant, Sheffer, went there and was informed by E. A. Frick & Co. that the wheat belonged to plaintiffs, and that he, said defendant, influenced said E. A. Frick & Co. to sell said wheat of plaintiffs with the object of allowing him, said defendant, to use the proceeds to make his account good over the 1st of April, and that said E. A. Frick & Co., through the influence

of defendant, as aforesaid, did sell the wheat, and deposited with, or loaned to, said defendant the proceeds thereof, under a promise to return the said proceeds, then said defendant received said money, which was trust funds, malâ fide, in other words, with notice of the trust, and the plaintiffs are entitled to recover in this suit the amount of the proceeds' of said wheat, so loaned to Sheffer, with interest.

2. "If the jury believe from the evidence that defendant did influence E. A. Frick & Co. to sell. the wheat of plaintiffs, and that E. A. Frick & Co. were insolvent at the time, with the object of getting the use of the money for his (defendant's) own purposes and advantage, and that said E. A. Frick & Co. did sell said wheat, and deposited the money, the proceeds thereof, with said defendant at his instance and through his influence as aforesaid, and under promise to return it, then said defendant received said fund malâ fide from E. A. Frick & Co., trustees, and the plaintiffs are entitled to recover.

3. "That if the jury believe from the evidence that Sheffer induced E. A. Frick & Co. to sell the wheat sent to them, as commission merchants, for sale by Montgomery & Brough, in order that he, the defendant, could have the use of the money for several days for his own benefit and advantage, and under an arrangement with said E. A. Frick & Co. that he would receive it as the money of plaintiffs, and return it in time to enable E. A. Frick & Co. to meet the draft of plaintiffs on them, and by them accepted on account, as defendant alleges, of this same lot of wheat, and that said defendant did receive said sum of money under the facts and arrangements above mentioned, and did not repay it as promised, but, in violation of said arrangement to repay, fraudulently applied it to other purposes, equity estops him from setting up the defence that E. A. Frick & Co. were the owners of the wheat and money by reason of an acceptance made by them, and that, therefore, plaintiff is entitled to recover in this action.

4. "That the lien or qualified property a commission merchant has in or to property sent to him for sale, by reason of advances or the acceptance of a draft, is for the benefit of the commission merchant, and may be waived, and when waived by him, a third person dealing with him, and having full knowledge of the waiver, cannot successfully set up any defence which involves a violation of such waiver.

5. "That if the jury believe from the evidence that E. A. Frick & Co. were insolvent at the time of the transaction in reference to the wheat and money, as detailed by the witnesses, and that E. A. Frick & Co. did not claim any lien, right or property in the grain sent to them by Montgomery & Brough, by reason of their acceptance of a draft drawn on them by Montgomery & Brough, and if the defendant was informed of the fact that the

grain belonged to Montgomery & Brough, and procured it to be sold, and received the money under the circumstances mentioned by witnesses, then he is liable to the plaintiff in this action.

The defendant asked the court to charge :—

2. "That if E. A. Frick & Co., on the 29th of March 1866, had theretofore accepted the draft of said Montgomery & Brough, for $2000, at thirty days, not then expired, drawn against their consignment of wheat, to be sold by said E. A. Frick & Co., the said Frick & Co. had a right to sell said wheat and make such disposition of the proceeds as they thought proper, and if the amount of said proceeds was handed over to the defendant and applied by him in part payment of the debt of E. A. Frick & Co. to the Glen Rock Bank, to a larger amount than said draft, or to take up paper due said bank by said firm, which he still holds, of a larger amount than said money, the plaintiffs in this suit cannot interfere with the transaction and oblige the defendant to pay the like amount of money to them.

4. "That if E. A. Frick & Co., before the 29th of March 1866, had accepted the draft of said plaintiffs for $2000, at thirty days, not then expired, drawn against the wheat consigned to them for sale, and the said E. A. Frick & Co. sold said wheat on the said day, they had a right to make any disposition of it they chose, and if even they lent the money to the defendant, the plaintiffs cannot, by seeking to recover on their supposed title to the wheat, in disaffirmance of the acts of E. A. Frick & Co., maintain this suit against this defendant.

5. "That a principal cannot, in any case, in attempting to follow the proceeds of his property, in the shape of money, claim it from any person unless he can show that such person had it at the time suit was brought, and had received it unmingled with other moneys; and if the jury believe that any proceeds of the wheat spoken of in this case were handed over by E. A. Frick & Co. to J. R. Foust mixed with other money paid him at the time, that he (Foust) handed over all he got from E. A. Frick & Co., and from other persons in a general mass of notes to the defendant, and he, the defendant, parted with it before this suit was brought, in whatever capacity he acted in the matter, the plaintiff cannot recover.

6. "That if E. A. Frick & Co., on the 29th of March 1866, had, theretofore, accepted the draft of said Montgomery & Brough for $2000, at thirty days, not then expired, drawn against their consignment of wheat to be sold by said E. A. Frick & Co., the said Frick & Co. had a right to sell said wheat and make such disposition of the proceeds as they thought proper, and if the amount of proceeds were, as alleged, lent merely to the defendant on time by E. A. Frick & Co., the plaintiffs if they could, in any view, be placed in a position in this suit to maintain the action

[Sheffer v. Montgomery.]

against this defendant, must do it subject to the right of the defendant to set off against E. A. Frick & Co.

The court affirmed all the plaintiffs' points, "if the facts as presented are true, and found to be so by the jury from the evidence."

In answer to the defendants' points the judge said:—

"The law as stated in this point as a general proposition is correct. But if Frick & Co. sold the wheat of plaintiffs under the circumstances stated in the point and with the knowledge that the money in question was the proceeds of plaintiffs' grain, and borrowed it from Frick & Co., as plaintiffs' money, and agreed to return it for plaintiffs' use, and did not, then the legal propositions stated in the point are not applicable to such a state of facts.

"4. We cannot answer this point in the affirmative.

"5. We cannot answer this point in the affirmative as written. The law as stated in it is correctly stated. But it is not applicable to this case if the defendant knew the money in question was the proceeds of the plaintiffs' wheat, and was sold at the defendant's instance to enable him, the defendant, to get the proceeds, and he received it as the plaintiffs' fund and promised to return it to enable Frick & Co., to meet plaintiffs' draft and did not repay it as promised.

"6. We cannot answer this point in the affirmative as written.

"The law as stated in it is correctly stated, but it is not applicable to this case, if the defendants knew the money was the proceeds of plaintiffs' wheat and was sold at defendant's instance to enable him to get the proceeds, and he received it as the plaintiffs' funds and promised to return it to enable Frick & Co., to meet plaintiffs' draft and did not repay it as promised, the defendant cannot, if such be the facts of the case, set off the money paid by him to the Glen Rock Bank, or the check of Frick & Co., paid by him, to defeat the plaintiffs' recovery in this case."

The verdict was for the plaintiffs for $2013.09.

The defendant took a writ of error, and assigned for error the answers, as above given, to the points of the respective parties.

*J. L. Mayer* (with whom was *J. Evans*), for plaintiff in error. —Commission merchants are purchasers to the extent of their advances: Vail *v.* Durant, 7 Allen 408; Haille *v.* Smith, 1 Bos. & Puller 568; Halbrook *v.* Wright, 34 Wend. 169; Smedly *v.* Williams, 1 Parsons 365; Hall *v.* Hinks, 21 Md. 416; Rex *v.* Lee, 6 Price 369; Gillespie *v.* Mather, 10 Barr 28; Baugh *v.* Kirkpatrick, 4 P. F. Smith 84. A factor having made advances on a consignment, after sale may set off with the assent of the purchaser a debt due to him: Story on Agency, § 408; Hudson *v.* Granger, 5 Barn. & Ald. 27; Brown *v.* McGran, 14 Peters 495; Schumacher *v.* Eby, 12 Harris 521; Hopkins *v.* Beebe, 2 Casey

[Sheffer *v.* Montgomery.]

85; Grove *v.* Dubois, 1 T. R. 112. If factors have guarantied the sale, the note of the purchaser would be their own : W. Boylston Man. Co. *v.* Searle, 15 Pick. 229. If the plaintiffs affirm the sending of the money by Frick they are subject to the set-off against Frick : Smith *v.* Hodson, 4 T. R. 211; Huntingdon *v.* Knox, 7 Cushman 371; Rutter *v.* Gable, 1 W. & S. 108. If the money belonged to Frick, there was no consideration to the plaintiffs from the defendant : Campbell *v.* Lacock, 4 Wright 451; Cummings *v.* Klapp, 5 W. & S. 511; Ramsdale *v.* Horton, 3 Barr 330. The plaintiffs could not have recovered from Frick without surrendering the acceptance : King *v.* Kelley, 1 P. F. Smith 36; Hays *v.* M'Clurg, 4 Watts 452; Parsons on Bills 150, note.

*V. K. Keesey* (with whom was *A. N. Green*), for defendants in error.—The claim of a factor for advances is a lien only, not a title to the property : Act of April 14th 1834, § 1, Pamph. L. 375, Purd. 453, pl. 1; Newbold *v.* Wright, 4 Rawle 211. The fund can be followed : Farmers' and M. Bank *v.* King, 7 P. F. Smith 202; Story's Eq., § 1259; Pennell *v.* Deffell, 23 Eng. Law & Eq. 460; Frazier *v.* Erie Bank, 8 W. & S. 18; Stair *v.* The York National Bank, 5 P. F. Smith 364. The defendant's promise to repay based on the money being from the plaintiffs' goods was a consideration : Campbell *v.* Lacock, 4 Wright 451; Hind *v.* Holdship, 2 Watts 104; Beers *v.* Robinson, 9 Barr 229; Vincent *v.* Watson, 6 Harris 100. The non-surrender of the draft could be remedied in the Supreme Court by directing a refunding bond; besides this objection should have been taken at an earlier stage : Logan *v.* Richardson, 1 Barr 372; Shaw *v.* Bayard, 4 Id. 257; Wood *v.* Davidson, 2 Rawle 52; Patterson *v.* Nichol, 6 Watts 382; Baughman *v.* Kunkle, 8 Id. 484.

The opinion of the court was delivered, May 12th 1870, by

Agnew, J.—The clear and uncontradicted evidence in this case shows that the defendant received the sum of $1718.16, the proceeds of the wheat of the plaintiffs in the hands of E. A. Frick & Co., for sale on account of the plaintiffs, with a full knowledge of this fact; that indeed the wheat was sold by Frick & Co., at the request of the defendant in order to enable him to have the use of the money of the plaintiffs for a few days; and that he promised to return the same on the 8th of April following, in order to enable Frick & Co. to pay a draft of the plaintiffs dated 7th March 1866, at 30 days for $2000, and falling due April 9th 1866. The money clearly belonged to the plaintiffs until Frick & Co. paid their draft, a fact within the defendant's power to prove by the production of the draft on a *subpœna duces tecum* to Frick & Co., or by other competent evidence. The reason of this is obvious. Frick & Co. were factors only for the sale of the wheat. As between them

[Sheffer v. Montgomery.]

and the plaintiffs the property in the wheat was in the latter, whatever might be the rights of the former as factors, as to third persons. It is said they sold upon credit and guarantied the sales. But clearly neither their guaranty nor their acceptance of the drafts *ipso facto* makes them owners of the wheat as against their principals. Nothing but payment or its equivalent could effect this. The draft was long overdue at the trial, and there was no evidence that it had been negotiated or that demand had been made by any third party of Frick & Co. for its payment. The utmost presumption therefore was that the draft remained in the hands of the plaintiffs unpaid. This was not an action against Frick & Co., for the proceeds of the wheat, and a notice of special matter requiring the production of the draft by the plaintiffs as a condition in equity before recovery; but the action was against a third party, having no title either to the draft or the money, but bound to restore it to the owners, as money had and received to their use. The defendant could not ask a restoration of the draft as a condition precedent to a verdict of recovery, but could only show payment by Frick & Co. of the price of the wheat to defeat the plaintiffs' action. It was the money of the plaintiffs which he received and expressly promised to refund to meet the draft, and he was bound to pay it to the owner of the wheat, unless he could show that by the subsequent act of the plaintiffs they had been satisfied for the wheat, thus carrying over to Frick & Co. the right to the proceeds. In the absence of all evidence therefore that Frick & Co. had paid the draft, there could be no ground for averring a change in the property of the wheat or *its* proceeds from the plaintiffs to Frick & Co. The defendant had really no defence under the evidence, which was all on one side. It was of no consequence how Sheffer, the defendant, used the money; whether he paid a debt of Frick & Co. with it or not. He knew that he had received the money from the trustee and factor of the plaintiffs, whose wheat was sold at his own instance to enable him to get the money. He knew therefore that it was not the money of Frick & Co., and that he instigated them to do an illegal act, and to divert the money from their principals. This disposes of all of the assignments of error, for they all converge upon the same point, and the judgment of the court below must be affirmed.

Judgment affirmed.